IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04CV284-MU

| | |
|---|---|
| DOROTHY CATHCART, HARRIETT C. FEIMSTER, personally and as administratrix of the estate of SAMUEL CATHCART, deceased, TONDA CATHCART, and JORDAN CATHCART, <br>           Plaintiffs <br><br> v. <br><br> LIFE INSURANCE COMPANY OF NORTH AMERICA <br>           Defendant. | O R D E R |

**THIS MATTER** comes before the Court on Plaintiffs' and Defendant's cross-motions for Summary Judgment. After reviewing the filings and the administrative record, it appears to the Court that a genuine issue of material fact, unresolvable on the administrative record, exists as to whether the decedent was "at work" after the effective date of his life insurance contract, and therefore as to whether that contract came into force. As further evidence is required to resolve the matter, both motions are DENIED.

**I. BACKGROUND**

Decedent Samuel Cathcart ("Cathcart") worked as a resident general manager for Suburban Lodge of Lawrenceville ("Suburban Lodge") up until his death on August 18, 2003. Suburban Lodge contracted with Paychex Business Solutions ("PBS") to provide its payroll and benefits administration, and PBS in turn contracted with Defendant Life Insurance Company of North America ("LINA") to provide employees with life insurance. LINA's policies for PBS employees had an effective start date of August 1, 2003, provided the employee was "actively at work" on that

date. If the employee was absent "because of injury or sickness," the policy would begin when the employee "returned full time to the duties of [his] work."

Cathcart had completed the enrollment procedure for a LINA policy when he entered the hospital suffering from pneumonia on July 27, 2003. He was released that same day, but returned on July 31, and remained in the hospital until August 7, 2003. He received his full salary during this time, as his last pay stub shows full payment from July 27, 2003 to August 9, 2003. Cathcart died of pneumonia in his apartment on August 18, 2003. According to PBS, Suburban Lodge reported Cathcart as having worked a regular 80 hours, not considered sick leave, while hospitalized. The day he died, Cathcart was reportedly in his apartment discussing business matters with his supervisors.

In its claims investigation, LINA contacted PBS and determined that Cathcart's last day at work was July 20, 2003, and that his policy therefore never came into effect. Plaintiffs, the designated beneficiaries of the policy, disputed this determination, and pointed to Cathcart's pay stub as evidence to the contrary. On further review, LINA determined that Cathcart was in the hospital from July 31 to August 7, 2003, and therefore could not have been "at work" during that period, despite the pay stub and Suburban Lodge's statement to the contrary. Based on these factors, LINA denied the claim.

## II. DISCUSSION

Ordinarily, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). This standard is altered somewhat for benefits decisions under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001 *et seq.*, as the court is generally limited to a review of the administrative

record in these cases. Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1026-27 (4th Cir. 1993). Under Quesinberry, a court may decide in its discretion whether to allow evidence beyond that contained in the administrative record. Id. at 1025. This discretion should be exercised "only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review."[1] Id. Thus, where the administrative record is too meager to adequately determine the issues brought before the court, further evidence may be admitted as necessary. Summary judgment must be denied in such cases, and a bench trial held to resolve the matter. See Neumann v. Prudential Ins. Co. of America, 367 F. Supp. 2d 969, 977-80 (E.D. Va. 2005) (discussing in detail the application of summary judgment to ERISA claims for benefits in the Fourth Circuit).

The record reveals only conflicts and confusion as to whether Cathcart was at work on or after August 1, 2003. There is considerable evidence that he undertook work-related activities both while in the hospital and after his release, but whether those activities constituted "at work" is unclear. In fact, the very meaning of the phrase "at work" is left ambiguous, with no clarification anywhere either in the insurance contract or elsewhere in the record. All that is revealed is in the contract itself, which states only that the employee must be "actively at work" and may not be "absent from work, because of injury or sickness," but must have "returned full time to the duties of [his] work."

Given the facts in the record, Cathcart could have spent twelve hours a day, every day, on

---

[1] A district court will review the administrator's decision *de novo* where, as here, an employee-benefit plan is silent on the discretion afforded the plan administrator. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

Suburban Lodge's business as it is laid out in his job description.[2] Conversely, he may have spent ten minutes a day or less, which would clearly not qualify under the most lenient definition of "at work." The plan administrator apparently based his determination on the statement by PBS that Cathcart's last day at work was July 20, 2003. Were this the only evidence before the administrator, the Court would agree with his determination, but it is not. Though PBS stated that Cathcart's last day of work was July 20, it then paid him for work presumably performed after that date, up until August 9, 2003, making its prior assertion seriously suspect. Furthermore, as a resident manager for an apartment complex, part of Cathcart's job was to occupy his apartment and be on call 24 hours a day. In fact, his occupation of the apartment itself appears incident to his employment, and his very possession of it could be taken as strong evidence that he was "at work" at the time. The Court makes no determinations as to these facts or their implications beyond pointing out that the evidence in the record is insufficient to allow an adequate *de novo* review of Plaintiffs' claim. As such, the parties are hereby notified that evidence beyond the administrative record will be allowed in a future evidentiary hearing to determine whether Cathcart was actually "at work" on or after August 1, 2003.

**IT IS THEREFORE ORDERED** that both Plaintiffs' and Defendant's motions for Summary Judgment are **DENIED**.

Signed: March 8, 2006

Graham C. Mullen
United States District Judge

---

[2]Cathcart's job description is likewise missing from the record. Plaintiff's counsel should supply evidence both of the job description and of Cathcart's actual job duties, as well as any evidence that he actually performed those duties, for the future evidentiary hearing.